In the Matter of the Estate of DAVID O'MEARA, Deceased.

Surrogate's Court, Westchester County, April 21, 1948.

*Richard Leo Fallon* for Theresa O'Meara, appellant.

*Hamilton McInnes* and *William G. Ross* for State Tax Commission, respondent.

GRIFFITHS, S. The executrix under the will of this decedent has appealed from a *pro forma* order of this court dated December 17, 1947, fixing the estate tax in the amount of $296.92.

The facts are undisputed. At the time of his death on March 20, 1947, the decedent was indebted to a bank in the amount of $8,700 as evidenced by a promissory note in that amount dated January 8, 1947, and payable July 8, 1947. As collateral security for such obligation the decedent had assigned to the bank a life insurance policy in the face amount of $25,000. Following his death, and on the due date of the note, the executrix paid out of estate assets the full amount thereof, whereupon the bank delivered the insurance policy to her. Thereafter the insurer paid to the appellant individually, as the beneficiary named in the policy, the sum of $24,520.85, representing the face amount of the policy less an unpaid premium. A second policy in the amount of $2,500 written by another company was also paid in

full making the total proceeds of life insurance payable upon the death of the decedent the sum of $27,020.85. The appraiser deducted the amount of the note from such total of insurance and in computing the tax allowed as an exemption for life insurance benefits receivable by the widow only such reduced amount of insurance, or $18,320.85. While the assignment is not challenged by the surviving beneficiary, it will be assumed for present purposes that the insured reserved the right to change the beneficiary and to assign the policy.

Since the aggregate amount potentially " receivable " by the named beneficiary under both policies of insurance is less than the statutory exemption, it is undisputed that but for the loan in question the entire proceeds of the policies would be exempt property. (Tax Law, § 249-q, subd. c.) The State Tax Commission contends, however, that the effect of the assignment made by the decedent to the bank was to destroy such exemption rights to the extent of the amount of the obligation secured by said policy and remaining unpaid at the date of his death.

Section 249-r of the Tax Law requires that there be included in the gross taxable estate, the proceeds of policies of insurance upon the life of the decedent " receivable by the executor " (subd. 8), and also the proceeds of like policies of insurance " to the extent that such amount is required to be included in the gross estate under the provisions for the taxing of estates contained in any revenue act of the United States applicable to the estate of the decedent." (Subd. 9.) Although the 1942 revision of the Federal statutes abolished any specific exemption for the proceeds of insurance upon the life of the decedent payable to named beneficiaries (Internal Revenue Code, § 811, subd. [g]; U. S. Code, tit. 26), such an exemption is still allowed under our Tax Law. (See Tax Law, § 249-q, subd. c.)

The appraiser deducted the amount of the loan from the insurance proceeds and did not allow any deduction for such indebtedness against the true estate assets. The question presented on this appeal is whether an error of law was committed in limiting the amount allowable for the insurance exemption under the Tax Law to the sum of $18,320.85, representing the proceeds of the policies of insurance in question less the amount of the bank loan, and in failing to allow the amount of such bank loan as a debt deduction against the true estate assets in ascertaining the net taxable estate.

It is well established that an assignment by the insured of a life insurance policy upon his life as collateral security does not divest the assignor of his general property in the policy but

merely creates a lien in favor of the assignee to the extent of the debt owed. (*Jackson* v. *Tallmadge,* 246 N. Y. 133, 138; *Becker* v. *Clark,* 180 App. Div. 182.) Here, the transaction between the decedent and the bank created a debt for the payment of which he was primarily liable, which obligation upon his death became necessarily a debt of his estate. (*Matter of Jones,* N. Y. L. J., June 8, 1945, p. 2205, col. 3.) Under such circumstances it has been held in New York that to the extent the proceeds of the policy of life insurance are required to be used to discharge the obligation, the beneficiary has a valid claim against the estate. (*Chamberlin* v. *First Trust & Deposit Co.,* 172 Misc. 472; *Matter of Reinhold,* N. Y. L. J., Feb. 28, 1942, p. 896, col. 3; *Matter of Jones, supra.*) A different situation is presented where the insured secures funds from the insurance company. In *Wagner* v. *Thieriot* (203 App. Div. 757, affd. on opinion of MERRELL, J., below 236 N. Y. 588) it was held that such a transaction does not create the conventional relationship of debtor and creditor between the insured and the company, and under the applicable provisions of the Insurance Law and the terms of the standard life insurance policy, which must conform thereto, funds so secured are considered advances against the policy and not loans and that consequently no personal liability on the part of the insured results therefrom. The court concluded that the effect of so-called loans obtained in such a manner was to diminish the value of the policy for which, however, the named beneficiary had no recourse against the estate of the insured. In so holding, however, the court stated that if the insurance companies had a valid claim against the insured in the amount of the so-called loans then the beneficiary could rightfully insist that the claim be paid out of the decedent's general estate. (See, also, *Chamberlin* v. *First Trust & Deposit Co., supra; Matter of Reinhold, supra; Matter of Jones, supra.*) Since the decedent was primarily liable for the payment of such secured obligation, it follows that the obligee had a valid claim against the decedent's estate and, the estate assets being more than sufficient for its payment, that such claim constitutes a proper deduction for estate tax purposes.

The existence of such right of a designated beneficiary to recover from the estate, upon payment of the indebtedness secured by the policy, is wholly inconsistent with the apparent contention of the respondent that such portion of the proceeds of the policy in question as are subject to the assignment is receivable by the executor and not by the named beneficiary. While it

has been held that where, as here, the insured reserves the right to change the beneficiary, the rights of an assignee to whom the policy has been assigned for a valuable consideration are superior to those of the named beneficiary (*Davis* v. *Modern Ind. Bank*, 279 N. Y. 405), such holding is consistent with a recognition of all of the rights of the beneficiary, as against the estate. It follows, therefore, that although the decedent's power to revoke the designation of his wife made her interest as designee inchoate during his lifetime (*Davis* v. *Modern Ind. Bank, supra*), such interest became vested upon the occurrence of his death subject only to the lien of the assignee.

The case at bar is distinguishable from the Federal cases cited by respondent. In those cases the proceeds of the pledged insurance policies were used to discharge the indebtednesses. Here the assets of the true estate were used for such purpose. Moreover, it is significant that in both of the cited cases the courts not only did not mention any rule similar to the New York one enunciated in *Chamberlin* v. *First Trust & Deposit Co.*, and the other cases (*supra*), but stated that no such authority had been cited to them and they knew of none. (See *Matter of Hofferbert* v. *Commissioner of Internal Revenue*, 46 B. T. A. 1101 [May 8, 1942], and *Matter of Matthews* v. *Commissioner of Internal Revenue*, 3 T. C. 525 [March 28, 1944].)

The court concludes that the entire proceeds of the policy in question should be employed in determining for tax purposes the gross estate; that the obligation to the bank is a valid claim against the true estate and is therefore a proper debt deduction and that the entire proceeds of the insurance policy in question should have been employed in determining the allowable exemption under section 249-q of the Tax Law. It follows from the foregoing that the said *pro forma* order of this court dated December 17, 1947, must be amended by fixing the tax at $209.92 instead of $296.92 as presently provided.

The appeal is disposed of accordingly.